IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

SHIRLEY W.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 1:23-cv-01181-JES-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Brief (Doc. 6), the Defendant's Brief (Doc. 10), and the Plaintiff's Reply Brief (Doc. 11). This matter has been referred for a report and recommendation. For the reasons stated herein, the Court recommends the Plaintiff's request to reverse and remand for a calculation of benefits or, at a minimum, for further administrative proceedings be denied.[1]

**I**

Shirley W. filed an application for disability insurance benefits (DIB) on June 21, 2012, alleging disability beginning on May 23, 2012. Her DIB claim was denied initially, then upon reconsideration, and then, following a hearing in May 2014 at which Shirley and a vocational expert (VE) testified, an administrative law judge (ALJ) issued an unfavorable decision in August 2014. Upon appeal to this Court (after the Appeals Council denied review in April 2016), the case was remanded in March 2017 pursuant to the parties' joint stipulated motion for remand. The Appeals Council instructed the ALJ on remand to evaluate Shirley's mental

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 4) on the docket.

1

impairments in accordance with the special technique described in 20 C.F.R. § 404.1520a (psychiatric review technique or PRT), among other things. Following a December 2017 hearing before a different ALJ at which Shirley again testified along with a different VE, the ALJ issued an unfavorable decision in February 2018. The Appeals Council thereafter found no reason to assume jurisdiction, and the February 2018 decision was appealed to this Court. The Court again remanded the case, in May 2021, pursuant to a joint stipulated motion for remand. Upon remand, the Appeals Council remanded the case to yet a different ALJ and with directions.

A third hearing was held on April 5, 2022 before a third ALJ (John P. Mills III) and just as at the prior two hearings, the Plaintiff was represented by an attorney, and the Plaintiff and a VE testified. Following that hearing, Shirley's claim was denied on May 16, 2022. Her request for review by the Appeals Council was denied on March 8, 2023, making ALJ Mills's May 2022 Decision[2] the final decision of the Commissioner. Shirley timely filed the instant civil action seeking review of the ALJ's Decision on May 7, 2023.

## II

Shirley argues the ALJ again failed to include acknowledged mental limitations in her RFC, and remand for payment of benefits rather than for further administrative proceedings is warranted in this case.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt*

---

[2] This is the only Decision under review in the instant case. *See* 42 U.S.C. § 405(g) (providing an individual may obtain judicial review of a "final decision" of the Commissioner of Social Security made after a hearing); *and Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009) (explaining that the ALJ's second decision denying benefits was the ruling which constituted the SSA's final decision because the Appeals Council declined to review that second ruling).

2

*v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1)   is performing substantial gainful activity;

2)  suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3)  suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4)  is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5)  is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Shirley claims error on the ALJ's part at Step Four.

**A**

At Step One, the ALJ determined Shirley had not engaged in substantial gainful activity during the period from her alleged onset date of May 23, 2012 through her date last insured of December 31, 2013. AR 1246. At Step Two, the ALJ determined Shirley had the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis; right calcaneal spur; and seizure disorder. *Id.* At Step Three, the ALJ determined Shirley did not have an impairment or combination of impairments that met or medically equaled the

4

severity of one of the listed impairments. AR 1264. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]hrough the date last insured, the claimant had the [RFC] to perform light work as defined in 20 CFR § 404.1567(b) except no more than occasional overhead reaching; no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and no climbing of ladders, ropes, or scaffolds.

AR 1266. The ALJ found Shirley could perform her past relevant work as a service clerk and administrative clerk as that work did not require the performance of work-related activities precluded by her RFC. AR 1284. The ALJ concluded Shirley was not under a disability at any time from May 23, 2012 through December 31, 2013. AR 1285.

B

Shirley argues the Social Security Administration's (SSA) third Decision specifically found that she had "mild" limitations in all four broad areas of mental functioning; yet, again, the ALJ failed to account in some way in the RFC for those PRT findings without any explanation. She says the failure to account for the recognized mental limitations is especially egregious where the denial of benefits was premised upon an inability to perform more than unskilled work. The Commissioner counters that Shirley does not challenge the ALJ's Step Two finding that her mental impairments were not severe, nor does Shirley challenge the ALJ's rating of "mild" limitations in the four broad functional categories under paragraph B of the Listing of Impairments.

While the Court generally agrees with Shirley that the Commissioner's Brief does not entirely respond to her argument, the Commissioner's Brief is not entirely non-responsive where he also argues Shirley did not cite any evidence that the ALJ misunderstood or ignored. The Seventh Circuit recently articulated: it is "all about substance and not form" when it comes to ALJs surviving appellate review.

5

*Warnell v. O'Malley*, 97 F.4th 1050, \_\_ (7th Cir. 2024). "Time and time again, we have emphasized that social-security adjudicators are subject to only the most minimal of articulation requirements." *Id*. Bearing that in mind, the ALJ's Decision, read as a whole, contradicts Shirley's argument in support of remand.

At Step Two, the ALJ expressly stated that he took into consideration all allegations and impairments, regardless of severity when determining Shirley's RFC. AR 1250. He then spent the next 13 pages of his Decision addressing evidence pertaining to Shirley's complaints of memory issues and the evidence bearing upon those complaints. AR 1250-63. Among other things, the ALJ addressed Shirley's reports and testimony that her work was affected by short-term memory loss, that her memory was decreasing, that she stopped working because she was having memory issues that were impacting her work significantly, and that there was a considerable difference with her memory after she began having petit mal seizures. The ALJ considered Shirley's husband's similar responses as to Shirley's functioning. The ALJ considered an administrative law clerk's statements in the Employer Section of the State Universities Retirement System Application for Disability which provided that Shirley was unable to perform the duties of her position when she stopped working and explained that she was having difficulty focusing and remembering processes and instructions she had performed long and short term. The ALJ considered several mini-mental status examinations performed by Shirley's neurologist with results of 26/30, 28/30, 29/30, and 30/30 and examination findings of "normal" as to memory, orientation, concentration, fund of knowledge, and language.

The ALJ considered that Shirley's neurologist told Shirley in August 2012 that she could return to work with four-hour days for two weeks and then follow up. The ALJ noted that Shirley's treating neurologist kept her on her then-current

dose of anti-epileptic medication in February 2013 as Shirley did not want to change medications. The ALJ also considered that the consultative psychological examiner stated in September 2012 that Shirley "may be experiencing mild cognitive impairment secondary to her seizures," and the examiner noted the mental status examination was within normal limits except for borderline performance on word recall. AR 335. In late September 2012, Shirley told the consultative physical examiner that she had a hard time with memory and concentration, but her major problem was seizure episodes. Shirley's mental status examinations performed by her primary care provider (PCP) were normal in May and June 2013, and while Shirley stated her memory was horrible at a visit in August 2013, examination revealed normal psychiatric status, including recent and remote memory. Her mental status examinations were again normal in October and December 2013 and into January 2014, even though in December 2013, Shirley stated her cognitive and speech impairments persisted and were not improving.

As for Shirley's PCP's April 2014 opinions that Shirley's symptoms markedly impaired her ability to maintain social functioning and caused extreme impairment in her ability to perform activities of daily living and her ability to maintain concentration, persistence, or pace, the ALJ determined the doctor's opinions deserved little weight. The ALJ explained the opinions relied heavily on Shirley's subjective allegations, and the ALJ underscored that medical records did not document objective evidence of appreciable ongoing or regular deficits in memory, attention, or concentration. The ALJ stated that Shirley's PCP "has no first-hand knowledge or objective clinical findings to rely upon to support his opinions regarding marked or extreme limitations in mental functioning, or to support any significant difficulties in mental functioning." AR 1259. The ALJ also cited Shirley's other treating providers' and consultative examiners' examination

results which revealed normal orientation, memory, attention span, concentration, fund of knowledge, and intact short-term and long-term memory. The ALJ added that medical records did not support significant impairment in functioning due to memory loss where, for instance, Shirley was able to recall three words within a few minutes, scored well on mini- mental status examinations, her performance improved at a time she said her memory was worsening, and a neuropsychological evaluation in August 2017 included findings were not then-currently suggestive of "even a mild cognitive impairment." AR 1260 (citing AR 1150).

The ALJ repeated a State Agency psychological consultant's September 2012 opinion (affirmed by a second State Agency psychological consultant in January 2013) that Shirley's mental impairments were non-severe in light of finding mild restriction in two broad functional areas and no restriction in the remaining two. The State Agency consultant wrote, "[A] treating source provides the diagnoses: Mild Cognitive Impairment and Anxiety Disorder. Claimant is assessed under these two categories of mental impairment. She has some memory difficulties. She describes tactics she employs to adapt to these difficulties." *Id.* (citing AR 99). The ALJ explained he found "no compelling basis for disagreeing with the prior conclusions that the claimant did not have a severe mental impairment between May 23, 2012 and December 31, 2013." AR 1261.

In reaching the conclusion that Shirley's "medically determinable mental impairment of mild cognitive impairment, as well as anxiety with some depression, considered singly and in combination" was non-severe, the ALJ applied the PRT where he assessed Shirley's degree of functional limitation in the following four broad areas: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. He determined Shirley had "mild"

8

limitation in all four areas. AR 1262-64. With regard to the first area, the ALJ observed Shirley used techniques – writing things down and utilizing calendars and reminder on her phone – that many people use and that referring to texts, e-mails, or other notes would be a feasible option in the performance of work assignments. AR 1262. With regard to the second area, the ALJ noted Shirley's own statement that her speech impediment was more of a problem than her memory, but that Shirley nevertheless reported she socialized with others regularly, denied problems getting along with others, and said she enjoyed conversations. AR 1262-63. The ALJ also noted that Shirley's reported speech difficulties were generally not observed during examinations, and she interacted appropriately with her medical providers. AR 1263. With regard to the third area, the ALJ repeated Shirley's own statement to the consultative psychological examiner that, "I don't think I have a problem with concentration, I can complete projects without a problem." AR 1263 (citing AR 335). The ALJ also referred to his previous detailed discussion as to Shirley's routinely normal or nearly normal examinations in 2012 and 2013. With regard to the fourth area, the ALJ considered Shirley's statement that she could handle changes in routine, albeit with written notes for herself, as well as Shirley's use of various techniques to help with memory difficulties and her ability to advocate for herself and make reasonable decisions about medications and other treatments. *Id.*

At Step Four, the ALJ's RFC finding included no mental limitations. However, the ALJ there again mentioned Shirley's reports of short-term memory loss, Shirley's and her husband's statements that said memory loss affected Shirley's previous work. The ALJ explicitly referred back to his discussion of Shirley's hearing testimony, stating, "See the discussion of the testimony set forth at Step 2 of the sequential evaluation . . . for more details on the memory problems." AR 1269. The ALJ explicitly referred to the transcript of the December

2017 hearing which focused on mental issues and "focused primarily on recent or current functioning/issues." AR 1271. The ALJ explicitly referred back to his discussion of Shirley's PCP's statements that Shirley had significant memory issues/impairment: "[B]ut as has been discussed in detail earlier in the decision, that is not substantiated by objective medical findings at examinations by [her PCP] or other treating or examining providers." AR 1276.

With regard to the doctor's opinions as to Shirley's mental impairment and specific mental abilities, the ALJ stated:

> as discussed in detail earlier in the decision, the treatment records from [Shirley's PCP] (or other treating providers) do not document any appreciable deficits in short-term memory functioning; there is no objective medical evidence to substantiate the claimant's allegations of severe memory loss. Moreover, as discussed in detail earlier in the decision, many of the opinions set forth by [Shirley's PCP] regarding the claimant's degree of mental impairment and specific mental abilities are unsubstantiated, and sometimes even directly contradicted by the evidence of record. [Shirley's PCP] opined that the claimant's symptoms moderately to markedly impaired her ability to perform activities of daily living, but that is inconsistent with the evidence of record, including the statements of the claimant and her husband on disability paperwork regarding her daily activities.

AR 1279. The ALJ contemplated Shirley's neurologist's treatment records in the context of Step Four, reasoning those records:

> and the evidence of record more generally, also do not substantiate that the claimant would frequently experience interference with attention and concentration due to symptoms and/or medication side effects, or that symptoms would interfere to the extent that she was unable to maintain persistence and pace to engage in competitive employment.

AR 1282.

The ALJ also acknowledged that Shirley said she could handle the finances, but due to her memory, she might need to double-check herself. He noted Shirley's own admission that concentration and memory were not really issues with the church bulletin she assisted with putting together on a weekly basis, and the reasons for why that was (the ability to save work on the computer and refer to texts or e-mails concerning information for the bulletin). The ALJ re-visited evidence of Shirley's normal mental status examination findings and performance on mini-mental status examinations. With regard to opinion evidence of record, the ALJ reasoned that neurology records from Shirley's treating neurologist in July and August 2012 did not substantiate long-term need to be off work. Again mentioning the neurologist's statement the ALJ considered at Step Two that Shirley could return to work with four-hour days for two weeks and then follow up, the ALJ reasoned, "In other words, while [Shirley's neurologist] was easing her back into work, he believed she was capable of working." AR 1276.

The foregoing more than sufficiently illustrates that the ALJ did not fail to explain why the "mild" limitations found at Step Two were not accounted for in some way in the RFC finding at Step Four. Instead, the ALJ very clearly conveyed, by way of discussion of the record evidence and the conclusions expressly drawn therefrom at *both* Steps Two and Four, that he found Shirley was "slightly limited" in the four broad areas of mental functioning just *not* to the extent which might otherwise warrant restrictions in the RFC. *See Warnell*, 97 F.4th at __ (reiterating that all that is required of ALJs is that they provide an explanation for how the evidence leads to their conclusions that is sufficient to allow the reviewing court to assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)); 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00F(2)(b) (providing that a "mild" limitation in mental functioning means a person's ability to function

"independently, appropriately, effectively, and on a sustained basis is slightly limited"). 20 C.F.R. § 404.1545(a)(2) provides that an ALJ will consider all of a claimant's medically determinable impairments, including those that are not "severe" when the ALJ assesses the claimant's RFC. Put simply, the ALJ complied with Section 404.1545(a)(2), and his Step Four RFC finding is supported by substantial evidence.

The Seventh Circuit has said "a mild, or even a moderate, limitation in an area of mental functioning does not prevent an individual from functioning satisfactorily." *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013) (unpublished opinion) (internal citations omitted). Neither the definition of "mild" nor the applicable regulations dictate the inclusion of "mild" limitations in mental functioning in the RFC finding. *See Deborah E. v. Kijakazi*, No. 20-cv-02004, 2021 WL 6807995, at *2 (C.D. Ill. Dec. 20, 2021) ("While an 'ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014), it is possible that a limitation is unnecessary to include in the RFC assessment") (citing *Sawyer*, 512 F. App'x at 611). The argued shortcoming at Step Four does not actually appear in the ALJ's Decision. To find otherwise would amount to the Court resolving conflicts in the record and otherwise substituting its judgment for that of the Commissioner. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it").

Because the Court finds the ALJ did not commit the error of which Shirley complains, Shirley's second argument is now moot. Remand is not warranted here, and remand with directions that benefits be calculated is especially *un*warranted. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005)

("It remains true that an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability").

## IV

For the reasons set forth above, it is recommended that: 1) the Commissioner's decision denying the Plaintiff's application for disability insurance benefits be affirmed; 2) the Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Martin O'Malley, Commissioner of Social Security, denying benefits to the Plaintiff, Shirley W., is AFFIRMED."; and 3) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on April 25, 2024.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE